TURNER *v.* ST. CLAIR TUNNEL CO.[1]

INJURY TO EMPLOYÉ—LIABILITY OF MASTER—LAW OF CANADA.
  Plaintiff was injured, while working in a tunnel on the Cana-
  dian side of the St. Clair river, by reason of the high pressure
  of air maintained. The court instructed the jury that it
  was defendant's duty to adopt a proper system for maintain-
  ing the air pressure, and to use proper valves on the ma-
  chinery, or to give plaintiff warning of the danger. *Held,*
  that such instruction was improper, as the law of Canada
  governing the case was that defendant had performed its
  duty when it employed competent persons to control the
  work, and authorized them to purchase suitable machinery
  and appliances.

Error to St. Clair; Vance, J. Submitted April 21,
1899. Decided November 7, 1899.

Case by David Turner against the St. Clair Tunnel
Company for personal injuries. From a judgment for
plaintiff, defendant brings error. Reversed.

*E. W. Meddaugh* (*Geer & Williams,* of counsel), for
appellant.

*Chadwick & McIlwain,* for appellee.

GRANT, C. J. The facts and circumstances of plain-
tiff's claim are sufficiently stated in the former opinion.
111 Mich. 578 (36 L. R. A. 134, 66 Am. St. Rep. 397).
The case was retried, submitted to the jury upon the theory
that the law of Canada sustained the plaintiff's claim,
and the jury rendered a verdict in his favor. The sole
question now submitted for our determination is, What is
the law of Canada, as found in the decisions of the courts
of Canada and England? The learned circuit judge
summed up his instructions to the jury as follows:

---

[1] Rehearing denied December 21, 1899.

"Now, there are certain things which I have referred to before, which I want to repeat here, in connection with that rule: That, before this plaintiff can recover, he must satisfy you, by a fair preponderance of evidence: *First*, that the use of compressed air, as used on the Canadian side of this tunnel, was a dangerous agency; *second*, that the dangers connected with its use and with working in it were concealed and hidden, and were not open to the observation of ordinary men; *third*, that the plaintiff, Turner, did not know of that concealed and hidden danger at the time he went to work in it; and, *fourth*, that the defendant did not afford, either by the system which it adopted there or the valve which it used on that lock, or by adopting proper rules and giving proper warnings,—had not given him any knowledge or warning of the danger he was about to encounter."

The first three propositions are not involved in the question before us. The fourth proposition is the one whose correctness is challenged according to the law of England.

Questions were submitted to the jury, and answers thereto made, as follows:

"1. Did the defendant negligently provide unsuitable appliances for regulating and controlling the air in the locks?

"*A.* Yes.

"2. Did the defendant negligently maintain or sanction a defective or dangerous system for workmen remaining in and locking out from the compressed air chamber for inexperienced men?

"*A.* Yes.

"3. In the absence of Mr. Hobson, did the defendant provide for such actual superintendence of its use of compressed air as part of its system as its character and peculiar danger to workmen reasonably required?

"*A.* No.

"4. Were the plaintiff's injuries solely the result of the defendant's negligence?

"*A.* Yes."

The court instructed the jury that there was no evidence to show that Hobson, the general manager, or Eames and Murphy, were incompetent. Upon this point the court instructed the jury as follows:

"Now, it is a matter of common knowledge and com-

mon sense that a man may be a competent man in a work, and yet he may not use good judgment in adopting the system. There is nothing to impeach the competency of these men, even though you may be of the opinion that the system that they adopted was not the best system that could have been adopted. So far, then, as the competency of Mr. Hobson, Mr. Eames, or Mr. Murphy is concerned, I must ask you to accept that as a question of law from me, that there is no evidence here that would warrant you in finding that either one of those men was incompetent for the position which he held during the construction of that tunnel."

The third special finding is of no consequence. Mr. Hobson was not present to superintend the work all the time. He received daily reports from those in charge. His only knowledge of the use of compressed air was obtained from study, reading, and consultation with others of experience. He had had no actual experience in its use. He was a civil engineer of 40 years' experience. The tunnel was planned and constructed under his supervision. Mr. Murphy, a thoroughly competent man, was selected because of his skill, knowledge, and experience of many years in the use of compressed air. He had the entire charge of its use in the construction of the tunnel. Under this record, therefore, the defendant company had performed its full duty in the employment of competent men.

Mr. Hobson purchased the machinery for the air locks, and "the primary consideration was to get the best." The sole defect alleged in the machinery is that the valves used in letting out the compressed air were too large, allowing it to escape too fast. The defects claimed in the system are the failure to provide a competent person in charge of the locks, and in permitting the inexperienced workmen to lock themselves in and out. The question may be stated thus: Did the defendant, under the law of England, discharge its duty towards its employés by appointing competent superintendents and workmen, and authorizing them to procure all necessary machinery and appliances, or was it the absolute insurer of the safety of its machinery and appliances and of the system

adopted? The use of compressed air for the purpose of construction is not attacked. It had been in use for similar purposes many years. The defendant, through its directors and president, had intrusted the entire work, including the purchase of machinery, to competent and experienced men. The directors presumably were not men of experience in these matters. It is not claimed that they were. They did as men must always do under the like circumstances. Having no practical experience or knowledge themselves, they did all that could be done if the work was to be performed at all, viz., they selected men of experience to perform it. It would be great negligence for inexperienced men to attempt to supervise such work, and determine what system and what machinery should be used. It has always been, and always must be, that those who build buildings, large and small, construct machinery, or engage in the construction of extensive works like the present, are unskilled themselves in the strength of materials, the soundness of machinery, the proper methods of construction, or the proper system for conducting the construction. Of necessity, therefore, they must act through others, and rely upon the judgment of others. All intelligent men, workmen as well as others, are familiar with this fact. I have examined all the authorities cited by counsel, and also some others. I have found some difficulty in reaching a conclusion. Both in England and America are many decisions whose facts bring them so near the dividing line that it is often difficult to determine exactly when they are within and when without the rule, or, stated differently, when the rule applies to the facts of the case. It is also true that courts in England, as well as America, sometimes use language not necessary to the decision of the case, and this has enhanced the difficulty. I have found no case exactly in point, and no one the parallel of this in its facts. We must therefore determine what the law is by analogy from a careful analysis of the reported cases relied upon.

In *Tarrant* v. *Webb*, 18 C. B. 797, decided in 1856, defendant was the contractor to decorate a club-house. He erected a scaffold 30 feet high. It was insecurely constructed, and broke, precipitating plaintiff to the pavement. The negligence charged was the erection of an improper scaffold, by which plaintiff was exposed to unreasonable risk. Two theories were submitted to the jury: (1) That the scaffold was erected under the personal direction of the defendant; and (2) that the person employed to erect it was incompetent. No sciencer was alleged. Plaintiff recovered. In reversing the case the court say:

"The master may be responsible where he is personally guilty of negligence, but certainly not where he does his best to get competent persons. He is not bound to warrant their competency. The jury might have been of opinion that the defendant used every possible care to employ a competent person, * * * and yet that he was liable because it turned out that Martin was incompetent."

A similar case to this was *Wigmore* v. *Jay*, 5 Exch. 354, decided in 1850.

In *Gallagher* v. *Piper*, 16 C. B. (N. S.) 669, decided in 1864, the negligence charged was the failure to supply sufficient material for the erection of a scaffold. Defendant had selected a general agent, whose duty it was to supply these materials. The agent was notified of the insufficiency of the supply, in consequence of which plaintiff was injured. Held, that defendant had performed his legal duty in providing sufficient materials and a competent man. That case cited with approval *Wigmore* v. *Jay*.

What difference in principle is there between constructing a scaffold and constructing a tunnel? If Webb, in *Tarrant* v. *Webb*, was relieved from liability by employing a competent person to erect a scaffold, how can defendant, under the same rule, be liable when it has employed competent men to construct a tunnel? If Piper, in *Gallagher* v. *Piper*, was relieved from liability by the selection and appointment of a general manager, whose duty it was to supply these materials, why is not the defendant relieved?

In *Feltham* v. *England*, L. R. 2 Q. B. 33, decided in 1866, a traveling crane was moving on a tramway resting on beams of wood supported by piers of brick. While plaintiff was at work upon a locomotive, which was being hoisted, the piers gave way, and he was injured. Two grounds of liability were claimed: (1) That the manager was the *alter ego* of the master, and guilty of negligence in not ascertaining the sufficiency of the piers; and (2) that defendant might or ought to have known that the piers were not sufficient. Both contentions were decided against the plaintiff, the court saying:

"There was nothing to show that he [defendant] had employed unskillful or incompetent persons to build the piers, or that he did know, or ought to have known, that they were insufficient for the use to which they were applied. He was a maker of engines, and therefore, in that sense, an engineer, but not in the sense that he possessed special knowledge as to the strength or sufficiency of brickwork. We cannot, in the absence of such evidence, say there was any case fit to be submitted to the jury as to this ground of liability."

What difference in principle between the construction of these piers and the defendant's tunnel? The piers had just been completed when the accident occurred. If some workman engaged in the construction of the piers had been injured, would not the rule be the same?

In *Lovegrove* v. *Railway Co.*, 16 C. B. (N. S.) 669, decided in 1864, the negligence charged consisted in the improper laying of temporary rails, which were laid for the purpose of conveying trucks loaded with ballast. Sufficient sleepers were not placed under the rails. The company had no knowledge of the defective manner in which they were laid, and had used due care in the selection of persons to perform that duty. Held, that the company was not liable.

In *Smith* v. *Howard*, 22 Law T. (N. S.) 130, decided in 1870, the accident arose through the incompetency of a boy employed to assist the plaintiff. Defendant had delegated to one M., his foreman, the authority to engage and

discharge employés. Plaintiff complained to M. of the incompetency of the boy. Held, that defendant was not liable, because he had lawfully delegated this authority, and had received no actual notice of the boy's incompetency. What difference in principle between delegating the authority to employ workmen and delegating the authority to employ or purchase machinery and appliances?

In *Howells* v. *Steel Co.*, L. R. 10 Q. B. 62, decided in 1874, the accident arose through the negligence of defendant's manager, appointed in accordance with an act of parliament. Held, that the authority of the manager was the same as though he had been appointed outside the act. Judge Blackburn said:

"It is a rule of law that the master who employs a servant, not an agent, is responsible for the negligence of that servant in matters in which he is employed; but there is this exception, which has been established by a series of decisions: That with regard to a fellow-servant the master is held not so responsible, because this negligence is to be taken as one of the ordinary risks which the servant contemplates and undertakes when entering into his employment. When the master personally interferes, he is liable for his personal negligence, just as the individual servant would be."

In *Wilson* v. *Merry*, L. R. 1 H. L. Sc. 326, decided in 1868, plaintiff's son was killed by the explosion of fire damp, which was the result of the faulty construction of a platform which interrupted the free current or circulation of air in the pit. In disposing of the case, Lord Cairns, the chancellor, said:

"The master is not, and cannot be, liable to his servant, unless there be negligence on the part of the master in that in which he (the master) has contracted or undertaken with his servant to do. The master has not contracted or undertaken to execute in person the work connected with his business. The result of an obligation on the master personally to execute the work connected with his business, in place of being beneficial, might be disastrous, to his servants, for the master might be incompetent person-

ally to perform the work. At all events, a servant may choose for himself between serving a master who does and a master who does not attend in person to his business. But what the master is, in my opinion, bound to his servant to do, in the event of his not personally superintending and directing the work, is to select proper and competent persons to do so, and to furnish them with adequate materials and resources for the work. When he has done this, he has, in my opinion, done all that he is bound to do; and, if the persons so selected are guilty of negligence, this is not the negligence of the master. * * * Negligence cannot exist if the master does his best to employ competent persons. He cannot warrant the competency of his servants."

While it is true in that case that the defect was not one of original construction, and the chancellor said, "The system of ventilation in the pit before the scaffold was placed there was of the usual kind,—by downcast and upcast,—and it is not suggested that, before the platform was erected, the system of ventilation was defective in any particular," yet the platform was erected in carrying on the work of the defendants, whose servant, to whom they intrusted the responsibility of building it, had, in his judgment, made proper arrangements for the escape of the fire damp. What difference in principle between delegating the authority to construct platforms, scaffolds, etc., necessary in carrying on mining operations after the construction of the plant, and delegating the authority to build, purchase, and use those things essential to the original construction? The lord chancellor not only states the rule, but gives the reasons on which it is founded.

The same principle was involved in *Balleny* v. *Cree*, 11 Sess. Cas. (3d S.) 626, decided in 1873. It is true that the defect arose after the machine was furnished, but the rule seems to cover all cases. Lord Cowan said:

"As he [defendant] himself was unacquainted with machinery, he intrusted the charge of his work to a properly qualified and skilled mechanic, and to a superintendent, and manager."

Lord Benholme said:

"He [defendant] himself was not a skilled machinist, and he cannot be made responsible for the defect in the machinery."

See, also, *McFarlane* v. *Gilmour*, (1884) 5 Ont. 302; *Wilson* v. *Hume*, (1880) 30 U. C. C. P. 542.

*Matthews* v. *Powder Co.*, 14 Ont. App. 261, decided in 1887, is similar to *McFarlane* v. *Gilmour*. The language of Lord Cairns in *Wilson* v. *Merry*, and of Huddleston, B., in *Allen* v. *Gas Co.*, 1 Exch. Div. 251, is cited with approval. Hagarty, C. J., said:

" If the principal be aware of defects in machinery, and with that knowledge permit, or passively allow, the work to proceed, I can understand holding him liable. But that is very different from at once, on acquiring the knowledge, directing the necessary repairs, and the cessation of work until that be completed. If there be no interference whatever, and no knowledge of defects, trusting to a competent manager, it would seem from the cases that the principal is not liable for injury to a workman, the result of the negligence of his fellow-servant, the manager."

In speaking of the liability of the master for personal interference, he says: "I have not found any authority specially defining the measure of permitted interference." He then cites several authorities, and remarks that "there is a marked difference between English and American laws on the fellow-servant question."

These cases, in my judgment, logically lead to the conclusion that, under the law of England, the master is not liable where he does not personally superintend the work, and has intrusted to competent, skilled, and experienced agents the adoption of a system and the purchase of machinery.

The learned counsel for plaintiff cite, as supporting their contention, the following authorities: *Paterson* v. *Wallace & Co.*, 1 Macq. 748; *Brydon* v. *Stewart*, 2 Macq. 30; *Sword* v. *Cameron*, 1 Sess. Cas. (2d S.) 493; *Bartonshill Coal Co.* v. *Reid*, 3 Macq. 266; *Bartonshill Coal*

*Co.* v. *McGuire,* Id. 300; *Weems* v. *Mathieson,* 4 Macq. 215; *Smith* v. *Baker,* [1891] App. Cas. 325; *Allen* v. *Gas Co.,* 1 Exch. Div. 251; *Cook* v. *Stark,* 14 Sess. Cas. (4th S.) 1; *Webster* v. *Foley,* 21 Can. Sup. Ct. 580; *Fairweather* v. *Quarry Co.,* 26 Ont. 604; *O'Connor* v. *Bridge Co.,* 25 Ont. 12; 1 Beven, Neg. 738, 740; Smith, Mast. & S. 261.

In *Paterson* v. *Wallace & Co.,* 1 Macq. 748, decided in 1854, the negligence charged was the careless leaving of a stone in the roof of a mine. The question now before us was not discussed. The lord chancellor used this language:

" It is very true that if a master employ several servants in the same operation,—as in building a house or in working a mine,—the persons engaged being competent persons, should an accident happen to one of them owing to the neglect of another, the master is not, by the law of England, held responsible."

He states the question as follows:

"Now, the plaintiffs were to make out—*First,* that the stone had been negligently suffered to remain too long without being removed; and, *second,* they were to make out that Paterson lost his life, not by his own rashness in passing under that stone before its removal, but by reason of the negligence of the master, or the negligence of Snedden, his underground manager."

If that case is to be construed as holding that the negligence of Snedden, the underground manager, was attributable to the master, it has since been overruled by repeated decisions of the same court. The same statement applies to *Brydon* v. *Stewart,* (1855) 2 Macq. 30. The question in that case was this: "Was the deceased at the time fairly and really engaged in the work of the respondent?" In *Sword* v. *Cameron,* 1 Sess. Cas. (2d S.) 493, decided in 1839, in blasting, sufficient notice was not given to enable defendant's employé to reach a place of safety. The liability in this case was based upon the fact that the system or custom of doing the work was known to, and

sanctioned by, the defendant. Lord Cranworth, in *Bartonshill Coal Co.* v. *Reid*, 3 Macq. 266, thus interprets the decision. In *Bartonshill Coal Co.* v. *Reid*, (1856) 3 Macq. 266, and in *Bartonshill Coal Co.* v. *McGuire*, Id. 300, it was held that plaintiffs could not recover for the neglect of the engineer in the management of the machine. In *Smith* v. *Baker*, [1891] App. Cas. 325, it appears to be conceded that the effect of the delegation of authority by a master was not involved. The sole question there was the application of the maxim, "*Volenti non fit injuria.*" Counsel seem to rely largely upon this case, and quote from Lord Watson, who said:

"It does not appear to me to admit of dispute that at common law a master who employs a servant in work of a dangerous character is bound to take all reasonable precautions for the workman's safety. The rule has been so often laid down in this house by Lord Cranworth and other noble and learned lords that it is needless to quote authorities in support of it. But, as I understand the law, it was also held by this house, long before the passing of the employer's liability act, that a master is no less responsible to his workmen for personal injuries occasioned by a defective system of using machinery than for injuries caused by a defect in the machinery itself."

What is said by the learned lords was *obiter dicta*, but, assuming it to be intended as an authoritative statement, it does not touch the point here in controversy. It does not determine what the reasonable precautions are which the employer must take in securing the safety of his workmen by providing against a defective system of using machinery, and defects in the machinery itself. That case was founded upon the employer's liability act, of which Lord Watson said:

"The main, although not the sole, object of the act of 1880, was to place masters who do not upon the same footing of responsibility with those who do personally superintend their works and workmen, by making them answerable for the negligence of those persons to whom they intrust the duty of superintendence as if it were their own."

See criticism of this case by Mr. Beven in 8 Law Quart. Rev. 202.

In *Webster* v. *Foley*, 21 Can. Sup. Ct. 580, decided in 1892, one of the defendants was the manager of the work. Of course, his knowledge was the knowledge of his partner.

In *Fairweather* v. *Quarry Co.*, (1895) 26 Ont. 604, the plant and machinery were bought and furnished by the directors themselves. Sabiston, the manager, was also a director. It was there said:

"So far as this action rests upon liability to the company through their manager or superintendent, Sabiston, I think the point must be considered as settled by the case of *Howells* v. *Steel Co.*, L. R. 10 Q. B. 62. That is to say, in cases where the action is at common law for negligence, and not under the employer's liability act, the doctrine of manager or vice-principal, which was put forward in *Murphy* v. *Smith*, 19 C. B. (N. S.) 361, is now exploded, and the negligent directions or conduct of a fellow-servant, however much he may be higher in grade or responsibility than the one injured, cannot be reckoned as negligence of the common master. That branch of this case which rests upon negligence of the company because proper appliances were not furnished for the quarrying operations does not seem to have been fully tried out or submitted to the jury."

In discussing the duty of the master in regard to machinery and appliances, the court said:

"The employer may be made liable who is blameworthy in respect of not having provided proper machinery and appliances for the work; or, as put in *Bartonshill Coal Co.* v. *Reid*, 3 Macq. 266, where a master employs his servant in a work of danger, he is bound *to exercise due care* in order to have his tackle and machinery in a safe and proper condition, so as to protect the servant against unnecessary risks."

This case goes no further than to hold the master to the exercise of *due care* in providing machinery and appliances. It does not discuss the liability of the master where, from the very necessity of the case, he must, as in

the present case, delegate authority, and where he has done all that he could do to adopt a proper system and proper machinery. That case cites, as sustaining its text, *Rex* v. *Medley*, 6 Car. & P. 292. That was a criminal case, in which the respondents, the directors of the Equitable Gas Company, and persons employed by them, were indicted for carrying on their works as a nuisance, the charge being the pollution of the river and destruction of the fish. The question of the delegation of authority as affecting employés was not in the case. I fail to see that *Rex* v. *Medley* has any bearing upon the question involved in *Fairweather* v. *Quarry Co.*, or in the case now before us.

In *Allen* v. *Gas Co.*, (1876) 1 Exch. Div. 251, certain gates were safe when open and wedged up, but liable to fall when closed. One fell upon the plaintiff, and injured him. It was there said:

"The authorities referred to establish the principle that, in the event of the master not personally superintending and directing the work, his sole duty is to select proper and competent persons to do so, and to furnish them with adequate materials and suitable means and resources for accomplishing the work."

The question of the delegation of authority in a case of construction was not involved.

The text in Beven on Negligence and Smith on Master and Servant is based upon the same authorities which counsel have cited and to which I have referred, and goes no further than to hold the master to the exercise of due care in furnishing machinery and appliances, and in adopting a system,— a rule the soundness of which is not disputed, and which prevails in both England and the United States.

I cannot concur in the conclusion that these authorities cited by the plaintiff's counsel settle the law of Canada in accordance with their contention. They go no further than to say, even in the cases where the question was not involved, that it is the duty of the employer to take

reasonable precautions to establish a proper system and to furnish proper machinery; but they do not hold, as must be held in this case if the liability of the defendant is sustained, that an employer is the absolute insurer of the safety and soundness of his machinery and his system.    I am of the opinion that the learned circuit judge erred in instructing the jury as to the law of Canada, and that the judgment should be reversed, and a new trial ordered.

The other Justices concurred.